## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDY OXENRIDER, | : | CIVIL NO: 1:22-CV-01557 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| LEBANON COUNTY | : | |
| DISTRICT ATTORNEY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER
April 24, 2023

### I.    Introduction.

The plaintiff, Andy Oxenrider ("Oxenrider"), filed a complaint alleging that his rights were violated when he was arrested and charged with possession of a controlled substance.  After screening the complaint in accordance with 28 U.S.C. § 1915A, we conclude that the complaint fails to state a claim upon which relief can be granted.  We will, however, grant Oxenrider an opportunity to amend his complaint.

### II.    Background and Procedural History.

Oxenrider commenced this action pro se by filing a complaint on October 5, 2022. *Doc. 1* and *Doc. 1-1*.  Oxenrider's complaint consists of two documents, one

of which is the Civil Complaint Form (*Doc. 1*), and the other is a handwritten document (*Doc. 1-1*) that Oxenrider refers to as "Exhibit A." We will consider both documents together as Oxenrider's complaint. Oxenrider subsequently filed a motion to proceed *in forma pauperis*, which we granted. *Docs. 3, 9.*

Oxenrider names ten individuals and entities as defendants: (1) Lebanon County District Attorney's Office ("District Attorney's Office"); (2) Lebanon County District Attorney Pier Hess ("District Attorney Hess"); (3) Lebanon County Assistant District Attorney Courtney McMonagle ("Assistant District Attorney McMonagle"); (4) Commissioner of the Pennsylvania State Police Troop L Jonestown Station ("Commissioner");[1] (5) Pennsylvania State Police Trooper Jacob Kelliher ("Trooper Kelliher"); (6) Pennsylvania State Police Trooper Shimco ("Trooper Shimco"); (7) Comfort Inn Hotel ("Comfort Inn"); (8) Comfort Inn employee Jackeline Garcia ("Garcia"); (9) the Commonwealth of Pennsylvania ("Commonwealth"); and (10) Lebanon County ("County"). *Doc. 1-1* at 2–8, ¶¶ 4–18.

Oxenrider's complaint is unclear. In order to provide some context for Oxenrider's allegations, we begin with a brief overview of the basic facts—to the

---

[1] Oxenrider refers to this defendant as "John Doe," "the duly appointed commissioner of the Pennsylvania State Police Department Troop L.[sic] Jonestown Station," and as the commanding officer of Trooper Shimco and Trooper Kelliher. *Doc. 1-1* at 4, ¶ 10.

best we can determine what Oxenrider is alleging—underlying Oxenrider's claims. The facts that give rise to this complaint began during Oxenrider's stay at the Comfort Inn in Lebanon County. *Doc. 1-1* at 13, ¶ 34.  Oxenrider alleges that the manager, Jackeline Garcia, called the police and reported that Oxenrider was dealing drugs and refused to leave his hotel room. *Id.*  Trooper Kelliher received this report and obtained a warrant for Oxenrider's arrest. *Id.* at 11, ¶ 27.  After obtaining the warrant, Trooper Kelliher arrested Oxenrider and charged him with possession of a controlled substance. *Id*. at 11, ¶ 28.  Oxenrider was then incarcerated at the Lebanon County jail and District Attorney Hess subsequently prosecuted him on the charges. *Id*.  Oxenrider alleges that after a jury trial, he was acquitted on all charges arising from this incident at the Comfort Inn. *Id*. at 11, ¶ 29.

Even though Oxenrider's complaint is unclear at times, liberally construed, Oxenrider's allegations arise from his arrest[2] and subsequent prosecution and

_____

[2] It is unclear if there was one arrest or two arrests.  On his Civil Complaint Form, Oxenrider alleges that on "June 22, 2020 the Plaintiff was arrested [. . .] and charged with possession of a controlled substance." *Doc. 1* at 6.  In Exhibit A to his complaint, Oxenrider again alleges that he was arrested on June 22, 2020, (*Doc. 1-1* at 9, ¶ 21), but he also suggests that he was arrested again sometime after a warrant was issued on August 18, 2020. *Doc. 1-1* at 11, ¶ 28.  There is some inconsistency with these allegations because in the paragraph after Oxenrider alleges he was arrested on June 22, 2020, Oxenrider alleges to have been "incarcerated for aproximately [sic] 223 days." *Doc. 1-1* at 10, ¶ 22.  It is unclear how he was arrested after the August 18, 2020 warrant was issued if he was already incarcerated after the June 22 arrest.  Despite this inconsistency, we will

acquittal on charges of possession of a controlled substance. *Doc. 1* at 6. Oxenrider alleges that while staying at the Comfort Inn an employee called the police who later obtained a warrant and arrested him on charges of possession of a controlled substance. *Id.* Oxenrider alleges that the "defendants conspired together to violate the due process and other civil rights of the plaintiff and to charge him with a crime he did not commit[.]" *Doc. 1* at 7.

Oxenrider alleges violations of his "First Amendment right to freedom of expression, his right to be free from unlawful seizure of his person, his Fifth and Fourteenth Amendment rights to due process of law, including lack of probable cause to arrest, and his Eighth Amendment right to be free from cruel and unusual punishment." *Doc. 1-1* at 19, ¶ 48. Oxenrider additionally alleges "slander and defamation of plaintiff's character and an invasion of privacy, false arrest and imprisonment, malicious prosecution, abuse of process, prima facie tort, conspiracy tort, negligence, and gross negligence." *Id.* at 19, ¶ 49.

Oxenrider alleges that on June 22, 2020, Trooper Kelliher arrested him and charged him with possession of a controlled substance. *Doc. 1-1* at 9, ¶ 21. This was apparently after defendant Garcia, a supervising employee at the Comfort Inn, made a report to the police that Oxenrider was "dealing and/or possessing drugs

---

liberally construe the claims that arise out of these arrests and give Oxenrider leave to clarify these allegations should he elect to amend his complaint.

and refused to leave the room." *Doc. 1-1* at 13, ¶ 34.  Then, according to

Oxenrider, Trooper Kelliher, acting on the information from Garcia, "maliciously

and without probable cause went before John W. Ditzler Magistrate [sic] and

charged Plaintiff Oxenrider with having committed a crime, Defendant [Trooper

Kelliher] caused a warrant to be issued for the arrest of Plaintiff Oxenrider." *Id.* at

11, ¶ 27.

Sometime after the warrant for his arrest was issued on August 18, 2020,

Oxenrider alleges, he was again arrested and taken to the Lebanon County

Correctional Facility. *Doc. 1-1* at 11, ¶ 28.  According to Oxenrider, his arrest was

"ordered and directed" by Trooper Shimco and "approved" by the Commissioner.

*Id.* at 10, ¶¶ 23–24.  Oxenrider additionally contends that the Comfort Inn and

Garcia, acting in her supervisory position at the Comfort Inn, "took an active role

in the investigation and arrest" of Oxenrider. *Id.* at 10, ¶ 25.  He also alleges that

both District Attorney Hess and Assistant District Attorney McMonagle

"approved" or "ratified" his arrest. *Id.* at 10, ¶ 25.  Sometime later it appears that

District Attorney Hess prosecuted him on the charges, but he was subsequently

acquitted on May 26, 2022, following a jury trial. *Id.* at 11, ¶ 29.

Oxenrider claims that this incident has caused him to suffer "psychological

harm, mental distress, humiliation, embarrassment and defimation [sic] of his

character and reputation, underwent extreme shock and nervousness and

underwent psychological treatment and psychiatric care, and was prevented from attending his usual duties." *Id.* at 20, ¶ 50.  Oxenrider asks the court to award him a "declaration" of a violation of his rights, compensatory damages in the amount of $150,000, "nominal damages and punitive damages" in the amount of $150,000, and recovery of costs "in this suit." *Id.* at 21–22.

## III.    Screening of *In Forma Pauperis* Complaints—Standard of Review.

This court has a statutory obligation to conduct a preliminary review of complaints brought by prisoners given leave to proceed *in forma pauperis* in cases that seek redress against government officials.  Specifically, the court must review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

> **(a) Screening.**  The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal.**  On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint
> **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> **(2)** seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A(b)(1), the court must assess whether a complaint "fails to state a claim upon which relief may be granted."  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When determining whether a complaint states a claim upon which relief can be granted, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or a

formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint states a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. City of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff
> must plead to state a claim."  Second, the court should identify
> allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth."  Finally, "where
> there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they
> plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a *pro se* litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.    Discussion.

Oxenrider brings this action under 42 U.S.C. § 1983, alleging that his rights

were violated when he was arrested and charged with possession of a controlled

substance. *Doc. 1-1* at 1, ¶ 1.  As presented, the complaint fails to state a claim

upon which relief may be granted.  Oxenrider's complaint is defective in both form

and substance.  As to form, the complaint fails to comply with the pleading

requirements of the Federal Rules of Civil Procedure.  As to substance, the

complaint fails to state a claim upon which relief can be granted.

### A. The complaint does not comply with the pleading requirements of the Federal Rules of Civil Procedure.

Oxenrider's complaint does not comply with the pleading requirements of

the Federal Rules of Civil Procedure.  "Pleadings must be construed so as to do

justice." Fed. R. Civ. P. 8(e).  "This already liberal standard is 'even more

pronounced' where a plaintiff files the complaint without the assistance of

counsel." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting

*Erickson*, 551 U.S. at 94).  "[A] court must make reasonable allowances to protect

*pro se* litigants from the inadvertent forfeiture of important rights due merely to

their lack of legal training." *Id.*  Thus, "[c]ourts are more forgiving of *pro se*

litigants for filing relatively unorganized or somewhat lengthy complaints." *Id.*

Liberally construing Oxenrider's complaint, we nevertheless conclude that it

fails to comply with Fed. R. Civ. P. 8, which requires, among other things, that a

claim for relief must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief," and that "[e]ach allegation must be simple,

concise, and direct." Fed. R. Civ. P. 8(a)(2), 8(d)(1).  The complaint does not

contain a short and plain statement of Oxenrider's claims.  Rather than containing

simple, concise, and direct allegations, the complaint provides a lengthy and confusing factual narrative with numerous, unclear legal claims.

Oxenrider's complaint, consisting of two separate documents spanning 11 and 22 pages, respectively, fails to show his entitlement to relief. *Doc. 1* and *Doc. 1-1*. The complaint is rambling and fails to set forth a short and plain statement of his claims. The failure to comply with the above requirements as to form has led to substantive defects. After reviewing the complaint, it remains unclear what facts Oxenrider alleges amounts to the various alleged violations contained within the complaint.

### B. 42 U.S.C. § 1983 Claims.

Oxenrider brings his complaint under 42 U.S.C. § 1983, which "imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish that a person acting under color of state law deprived the plaintiff of a federally protected right. *Woloszyn v. Cnty. Of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Oxenrider alleges that ten defendants deprived him of his constitutional rights. *Doc. 1-1* at 2–7. We will address the claims against each of these ten defendants.

### 1. The Commonwealth.

Oxenrider names the Commonwealth of Pennsylvania as a defendant. *Doc. 1-1* at 7. ¶ 14. The Commonwealth, however, is protected by Eleventh Amendment immunity. The Eleventh Amendment implicates the court's subject-matter jurisdiction. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) ("Therefore, unless Congress has 'specifically abrogated' the states' sovereign immunity or a state has unequivocally consented to suit in federal court, we lack jurisdiction to grant relief in such cases."); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n.2 (3d Cir. 1996) (noting that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction"); *but see Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 197 (3d Cir. 2008) (noting that "the Supreme Court's jurisprudence has not been entirely consistent in the view that the Eleventh Amendment restricts subject matter jurisdiction"). Thus, '[t]he court may consider Eleventh Amendment issues *sua sponte*, but is not required to do so." *Zulueta v. Chuckas*, No. 1:18-CV-356, 2018 WL 5814689, at *2 (M.D. Pa. Nov. 6, 2018).

"Our federalist system of government accords respect for the sovereignty of the States in a variety of ways, including the Eleventh Amendment to the United States Constitution, which immunizes States from suits brought in federal court by both their own citizens and citizens of other States." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 81 (3d Cir. 2016).  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.  Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).  That presupposition is that each state is a sovereign entity in our federal system and it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.*

"Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)).  It "serves two fundamental imperatives: safeguarding the dignity of the states and

13

ensuring their financial solvency." *Id*.  It serves those interests by barring suits against the nonconsenting states. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) (stating that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").  "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.

There are two circumstances when the Eleventh Amendment does not bar a suit against a state or state agency.[3]  First, a state may waive its Eleventh Amendment immunity by consenting to suit. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).  Second, Congress may abrogate a state's Eleventh Amendment immunity when it unequivocally intends to do so and when it acts pursuant to a valid grant of constitutional authority. *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 269–70 (3d Cir. 2020).

---

[3] Additionally, under *Ex parte Young*, claims against a state official in his or her official capacity for prospective injunctive relief are not barred by the Eleventh Amendment. *See Ex parte Young*, 209 U.S. 123 (1908).  But *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993).

Neither of those circumstances are present here.  The Commonwealth of
Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. Stat.
and Cons. Stat. Ann. § 8521(b) ("Nothing contained in this subchapter shall be
construed to waive the immunity of the Commonwealth from suit in Federal courts
guaranteed by the Eleventh Amendment to the Constitution of the United States.");
*Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020)
("Pennsylvania has not waived its sovereign immunity defense in federal court.").
And Oxenrider has not cited to any statute that waives the Commonwealth's
Eleventh Amendment immunity in the circumstances of this case.  Oxenrider
attempts to bring his claims under 42 U.S.C. § 1983, which is the statutory vehicle
for civil rights claims against persons acting under color of state law.  42 U.S.C.
§ 1983 does not, however, override a state's Eleventh Amendment immunity.
*Quern v. Jordan*, 440 U.S. 332 (1979).

Thus, the Eleventh Amendment bars Oxenrider's claims against the
Commonwealth.

### 2. The Comfort Inn and Garcia.

Oxenrider alleges that Garcia, a supervising employee of the Comfort Inn,
reported that Oxenrider was "dealing and/or possessing drugs and refused to leave
the room." *Doc. 1-1* at 13, ¶ 34.  But "merely complaining to the police does not

convert a private party into a state actor for purposes of liability under § 1983."
*Bingaman v. Bingaman*, 4:07-CV-2352, 2009 WL 2424641 at *7 (M.D. Pa. Aug.
5, 2009); *see also Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 68
(3d Cir. 2006) (stating that "in the absence of a conspiracy with the police to
violate constitutional rights, a business's summons of a police officer to deal with a
possible disturbance, does not make it a state actor"); *Moldowan v. City of Warren*,
578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police,
responding to questions about a crime, and offering witness testimony at a criminal
trial does not expose a private individual to liability for actions taken 'under color
of law.'").  Thus, Garcia's report to the police alone is not a basis for liability
under § 1983.

Oxenrider also alleges that Garcia "took an active role in [his] investigation
and arrest[,]" but he does not allege facts supporting that assertion beyond a
conclusory allegation of a conspiracy. *Doc. 1-1* at 10, ¶ 25.  An otherwise private
actor may act under color of state law when engaged in a conspiracy with a state
official.  "The essence of a conspiracy is an agreement." *United States v. Kelly*,
892 F.2d 255, 258 (3d Cir. 1989).  "To demonstrate the existence of a conspiracy
under § 1983, 'a plaintiff must show that two or more conspirators reached an
agreement to deprive him or her of a constitutional right under color of law.'"
*LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway*

*Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir.1993), abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)). "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 1:13-CV-1552, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013). Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 3:12-CV-1660, 2013 WL 5656125, at * 5 (M.D. Pa. Oct. 15, 2013).

Because direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Still, to plead a conspiracy, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).

Here, Oxenrider makes a passing reference in his complaint to a conspiracy. *Doc. 1* at 7. But he has not alleged facts from which the court could reasonably infer that either Comfort Inn or Garcia agreed with a state actor to violate his

rights.  With the absence of an allegation of such a conspiracy, Oxenrider fails to show that the Comfort Inn or Garcia were acting under color of state law.

### 3. The District Attorney's Office.

Oxenrider names the District Attorney's Office as a defendant. *Doc. 1* at 2. District Attorney's Offices are not persons amenable to suit under § 1983. *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability[.]"); *Williams v. Black*, No. 3:20-CV-00465-SES, 2021 WL 2682063, at *4 (M.D. Pa. June 30, 2021) ("[T]he Adams County District Attorney's Office is not a separate legal entity that can be sued under § 1983.").  Accordingly, the District Attorney's Office is not a proper defendant under § 1983.

### 4. District Attorney Hess and Assistant District Attorney McMonagle.

Oxenrider alleges a claim of malicious prosecution against District Attorney Hess and Assistant District Attorney McMonagle. *Doc. 1-1* at 5, ¶ 11.  Based on the allegations in the complaint, these defendants were both acting in their prosecutorial capacity as District Attorneys in Lebanon County in bringing charges against Oxenrider. *Id*.  Thus, prosecutorial immunity bars the claims for damages against them.

18

"The text of § 1983 does not provide any immunities from suit." *Fogle v. Sokol*, 957 F.3d 148, 158 (3d Cir. 2020).  "Although § 1983 purports to subject '[e]very person' acting under color of state law to liability for depriving any other person in the United States of 'rights, privileges, or immunities secured by the Constitution and laws,' the Supreme Court has recognized that § 1983 was not meant to 'abolish wholesale all common-law immunities.'" *Yarris v. Delaware*, 465 F.3d 129, 134–35 (3d Cir. 2006) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Id*. at 135.  Although most public officials are entitled to only qualified immunity, public officials who perform "'special functions'" are entitled to absolute immunity. *Id*. (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)).  "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006).  "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz*, 438 U.S. at 512).

A functional approach is used to determine the immunity of a prosecutor. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997).  "The functions of the prosecutor encompass activities protected by both absolute and qualified immunity." *Kulwicki*

19

*v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).  The inquiry focuses on the nature of the function performed, not the identity of the actor who performed it, and "[u]nder this functional approach, a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial' capacity." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008).  "That functional test separates advocacy from everything else, entitling a prosecutor to absolute immunity only for work 'intimately associated with the judicial phase of the criminal process.'" *Fogle*, 957 F.3d at 159–60 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).

For example, a prosecutor is entitled to absolute immunity from a claim based on a prosecutor "initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  A prosecutor is also entitled to absolute immunity for the preparation and filing of charging documents and arrest warrants. *Kalina*, 522 U.S. at 129.  Absolute immunity does not, however, apply "'to administrative or investigatory actions unrelated to initiating and conducting judicial proceedings.'" *Weimer v. Cty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020) (quoting *Odd*, 538 F.3d at 208).  "Determining the precise function that a prosecutor is performing is a fact-specific analysis." *Fogle*, 957 F.3d at 160.  "And while '[i]t is tempting to derive bright-line rules' from the Supreme Court's jurisprudence, [the Third Circuit has] 'cautioned against such categorical

reasoning' to 'preserve the fact-based nature of the inquiry.'" *Id*. (quoting *Odd*, 538 F.3d at 210).

Here, the allegations regarding District Attorney Hess and Assistant District Attorney McMonagle concern their bringing criminal charges against Oxenrider and prosecuting his case. *Doc. 1-1* at 10–11, ¶ 26.  Thus, it is clear from the complaint that these defendants were both acting in their prosecutorial capacity. *Id*. Accordingly, prosecutorial immunity bars Oxenrider's claims for damages against them.

Although District Attorney Hess and Assistant District Attorney McMonagle are entitled to prosecutorial immunity from Oxenrider's claims for damages, "prosecutors are not immune from suit as to requests for declaratory or injunctive relief." *Blakeney v. Marsi*co, 340 F. App'x 778, 779 (3d Cir. 2009).  Thus, District Attorney Hess and Assistant District Attorney McMonagle are not entitled to immunity from Oxenrider's claims for declaratory relief. *Doc. 1-1* at 21. Nevertheless, Oxenrider fails to state a proper claim for declaratory relief.

"The purpose of a declaratory judgment is to 'declare the rights of litigants.'" *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013) (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  Although "[t]here is no question that a plaintiff can request declaratory relief to remedy alleged ongoing violations of her constitutional rights[,]" a "[d]eclaratory judgment

is not meant to adjudicate alleged past unlawful activity." *Wenzig v. Serv. Emps. Int'l Union Loc. 668*, 426 F. Supp. 3d 88, 100 (M.D. Pa. 2019), *aff'd sub nom. Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 265 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2756 (2021).  "The remedy is thus by definition prospective in nature." *CMR D.N. Corp.*, 703 F.3d at 628.  But here, Oxenrider does not allege that District Attorney Hess and Assistant District Attorney McMonagle's alleged past conduct will continue or that they are currently violating his rights.  Rather, Oxenrider is seeking a "declaration that the acts and omissions described herein violate his rights under the constitution and laws of the United States." *Doc. 1-1* at 21.  But, even assuming for the sake of argument District Attorney Hess and Assistant District Attorney McMonagle violated Oxenrider's rights in the past, "he is not entitled to a declaration to that effect." *Blakeney*, 340 F. App'x at 780 (concluding that "even if defendants violated Blakeney's rights in the past as he alleges, he is not entitled to a declaration to that effect").  Liberally construing the complaint, Oxenrider fails to state a proper claim for declaratory relief.

### 5. Trooper Kelliher, Trooper Shimco, and the Commissioner.

Liberally construed, Oxenrider's false arrest and malicious prosecution claims against Trooper Kelliher, Trooper Shimco, and the Commissioner fail to

state a claim.  The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.  "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  To state a malicious prosecution claim, the plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).  Because Oxenrider has failed to allege facts that show Trooper Kelliher, Trooper Shimco, and the Commissioner lacked probable cause, his claims for false arrest and malicious prosecution fail.

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). An "officer may draw inferences based on his own experience in deciding whether probable cause exists." *Ornelas v. United States*, 517 U.S. 690, 700 (1996). "An officer seeking a warrant on the basis of probable cause must follow a two-step process. First, the officer swears to an affidavit containing a summary of the events that she believes give rise to probable cause . . . Second, the officer presents the affidavit to a neutral magistrate, who conducts his own independent review of the evidence to determine whether it does, in fact, establish probable cause, and, if so, issues a warrant." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016).

Here, Oxenrider alleges that Trooper Kelliher arrested him and "maliciously and without probable cause went before John W. Ditzler Magistrate [sic] and charged Plaintiff Oxenrider with having committed a crime, Defendant [Trooper Kelliher] caused a warrant to be issued for the arrest of Plaintiff Oxenrider." *Doc. 1-1* at 11, ¶ 27. Oxenrider alleges that his arrest was "ordered and directed" by Trooper Shimco and "approved" by the Commissioner. *Id*. at 10, ¶¶ 23–24. Oxenrider does not, however, allege facts from which it can reasonably be inferred

that Trooper Kelliher, Trooper Shimco, or the Commissioner lacked probable cause to arrest or prosecute him.

Although Oxenrider alleges that Trooper Kelliher, Trooper Shimco, and the Commissioner lacked probable cause, a mere allegation that these defendants lacked probable cause is not sufficient. *Kline v. Hall*, No. 1:12-CV-1727, 2013 WL 1775061, at *3 (M.D. Pa. Apr. 25, 2013) ("Plaintiff fails to state a false arrest claim because his allegations as to probable cause are totally conclusory."); *Simonetti v. Robinson*, No. 1:20-CV-1108, 2021 WL 4316955, at *10 (M.D. Pa. Aug. 27, 2021) ("Although Plaintiff alleges he was arrested 'without probable cause,' this allegation is a legal conclusion.  The underlying facts, taken as true, do not support this conclusion."), *report and recommendation adopted*, 2021 WL 4306130 (M.D. Pa. Sept. 22, 2021).  Oxenrider alleges that Trooper Kelliher acted on information from Garcia, a supervising employee at the Comfort Inn, who made a report to the police that Oxenrider was "dealing and/or possessing drugs and refused to leave the room." *Doc 1-1* at 13, ¶ 34.  Oxenrider fails to allege facts beyond legal conclusions to support his claim that Trooper Kelliher, Trooper Shimco, and the Commissioner violated Oxenrider's right to be free from arrest or prosecution without probable cause.

Since Oxenrider has failed to allege facts sufficient to find that a constitutional violation occurred, the claims against Trooper Kelliher, Trooper Shimco, and the Commissioner as stated in the complaint fail to state a claim.

### 6. Lebanon County.

Oxenrider additionally names Lebanon County as a defendant. A municipality, such as Lebanon County, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.* Another way for a plaintiff to present a claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

26

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Here, Oxenrider has not alleged facts from which it can reasonably be inferred that a policy or custom of Lebanon County violated his rights. In fact, Oxenrider alleges nothing in this regard.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id.*

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798. Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)). In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106. "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at *5 (M.D. Pa. Mar. 31, 2022). "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Here, Oxenrider has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by Lebanon County caused a violation of his rights.  Again, Oxenrider alleges nothing in this regard. In sum, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against Lebanon County.

### 7. The Fourteenth Amendment.

In his complaint, Oxenrider mentions the Fourteenth Amendment and due process. *Doc 1-1* at 19, ¶ 48.  Liberally construed, Oxenrider may be attempting to assert substantive due process claims, which should be dismissed under the more-specific-provision rule.

29

The substantive component of the Fourteenth Amendment Due Process Clause limits what the government may do regardless of the fairness of the procedures that it employs. *Nekrilov v. City of Jersey City*, 45 F.4th 662, 680 (3d Cir. 2022). "The Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). "Under the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

Here, Oxenrider's claims fall under the Fourth Amendment. Thus, to the extent Oxenrider is attempting to bring substantive due process claims, those claims are barred by the more-specific-provision rule. *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) ("[If] a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Because Oxenrider's substantive due process

30

claims are barred by the more-specific-provision rule, the complaint fails to state a

Fourteenth Amendment claim upon which relief can be granted.[4]

### 8. The Fifth Amendment.

Oxenrider mentions the Fifth Amendment in his amended complaint.

*Doc 1-1* at 19, ¶ 48.  The Fifth Amendment provides, in part, that "[n]o person

shall . . . be deprived of life, liberty, or property, without due process of law." U.S.

Const. amend. V.[5]  The Due Process Clause of the Fifth Amendment, however,

applies only to the federal government and federal officials. *Shoemaker v. City of*

---

[4] The Supreme Court "has held that the Due Process Clause of the
Fourteenth Amendment 'incorporates' the great majority of [the] rights
[guaranteed by the Bill of Rights] and thus makes them equally applicable to the
States." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022).
"Incorporated Bill of Rights guarantees are 'enforced against the States under the
Fourteenth Amendment according to the same standards that protect those personal
rights against federal encroachment.'" *Timbs v. Indiana*, 139 S. Ct. 682, 687
(2019) (quoting *McDonald v. Chicago*, 561 U.S. 742, 767 (2010)).  The Fourth
Amendment applies to the States through the Fourteenth Amendment. *Glossip v.
Gross*, 576 U.S. 863, 876 (2015).  Thus, to the extent Oxenrider is attempting to
bring substantive due process claims, his claims are barred by the more-specific-
provision rule, but we recognize that to the extent Oxenrider refers to the Due
Process Clause of the Fourteenth Amendment in connection with his Fourth
Amendment claims, such reference is proper.

[5] The Fifth Amendment contains several clauses, and Oxenrider does not
explain why he cites the Fifth Amendment.  But because Oxenrider does mention
due process, we construe the amended complaint to be attempting to raise a Fifth
Amendment due process claim.

*Lock Haven*, 906 F. Supp. 230, 237 (M.D. Pa. 1995).  "It does not apply to the acts or conduct of the states, their agencies, subdivisions, or employees." *Id*.

Because the defendants here are not federal actors, the Fifth Amendment is not applicable in this case.  Moreover, as discussed above, since Oxenrider's claims fall under the Fourth Amendment, he may not rely on substantive due process.  Thus, the complaint fails to state a Fifth Amendment claim upon which relief can be granted.

### 9. The First Amendment.

Oxenrider mentions the First Amendment right to "freedom of expression" in his complaint. *Doc 1-1*. at 19, ¶ 48.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.  "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]" *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  The "plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action[.]" *Id*. at 259.  Here,

however, Oxenrider fails to allege facts that show a causal connection between his arrest and prosecution and protected speech.

Oxenrider also fails to allege facts to establish a lack of probable cause for his arrest.  "The presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).  "Absent such a showing, a retaliatory arrest claim fails" *Id.* at 1725.  Thus, Oxenrider pleads no facts to establish a violation of his First Amendment rights and fails to allege a First Amendment claim.


### 10.  Eighth Amendment

Oxenrider mentions his Eighth Amendment "right to be free from cruel and unusual punishment." *Doc. 1-1* at 19, ¶ 48. "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Glossip v. Gross*, 576 U.S. 863, 876 (2015). "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671, n. 40 (1977).  "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Id*.  "Where the State seeks to impose punishment without such an

adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Id*.  "Thus, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n. 6 (1989)).

Liberally construed, Oxenrider's complaint alleges that Oxenrider's arrest and subsequent incarceration on the charges, of which he was subsequently acquitted, resulted in cruel and unusual punishment.  Since Oxenrider alleges that he was acquitted on the charges, Oxenrider fails to allege any facts that state a claim for a violation of his Eighth Amendment right to be free from cruel and unusual punishment which would only apply if he had been convicted and sentenced on the charges.  Thus, the complaint fails to state an Eighth Amendment claim upon which relief can be granted.

### C. State Law Claims.

In addition to federal claims, Oxenrider is asserting state law claims. *Doc. 1-1* at 19, ¶ 48.  Such claims would fall within the court's supplemental jurisdiction.  Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has

34

dismissed all claims over which it has original jurisdiction. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Oxenrider alleges nothing unique about this case in his complaint such that considerations of judicial economy, convenience, and fairness provide an affirmative justification for exercising supplemental jurisdiction over his state-law claims. Accordingly, we decline to exercise supplemental jurisdiction over the state-law claims.

## V.     Leave to Amend.

Before dismissing a complaint under a screening provision of 28 U.S.C. § 1915, the court must grant the plaintiff leave to amend his complaint unless

35

amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).  In a civil rights action, the court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

Here, given the liberal amendment standard, we will grant Oxenrider an opportunity to correct the deficiencies noted above in an amended complaint for several of the defendants and claims and deny him leave to amend others.  We will grant Oxenrider leave to amend his claims against Trooper Kelliher, Trooper Shimco, the Commissioner, the Comfort Inn, Garcia, and Lebanon County.

We will not grant Oxenrider leave to amend his complaint regarding several defendants and claims as leave to amend would be futile.  Because the Eleventh Amendment bars Oxenrider's claims against the Commonwealth, it would be futile to grant Oxenrider leave to amend as to the Commonwealth.  Additionally, since the District Attorney's Office is not a proper defendant in a § 1983 action, leave to amend the claim against the District Attorney's Office would be futile.  Further, given that District Attorney Hess and Assistant District Attorney McMonagle are shielded by prosecutorial immunity from Oxenrider's claims based on his prosecution for damages and Oxenrider cannot properly state claims for declaratory relief, leave to amend as to them would be futile.  We will also not grant Oxenrider leave to amend his Fourteenth Amendment claim because it is

36

barred by more-specific-provision rule.  Oxenrider's Fifth Amendment claim is

also futile because none of the defendants are federal actors.  Finally, we will not

grant Oxenrider leave to amend his Eight Amendment claim since he was acquitted

on the charges.

Thus, Oxenrider will have the opportunity to amend his complaint. [6]  Should

he elect to file an amended complaint, Oxenrider should be aware that he must

clearly identify precisely what his claims are against each defendant, and he must

identify facts which give rise to these claims.

---

[6] Any amended complaint must be titled as an amended complaint and must
contain the docket number of this case. Fed. R. Civ. P. 10(a).  "The plaintiff is
advised that any amended complaint must be complete in all respects." *Young v.
Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  "It must be a new pleading
which stands by itself as an adequate complaint without reference to the complaint
already filed." *Id*.  "In general, an amended pleading supersedes the original
pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*,
938 F.3d 69, 82 (3d Cir. 2019).  "Thus, the most recently filed amended complaint
becomes the operative pleading." *Id*.  In other words, if an amended complaint is
filed, the original complaint will have no role in the future litigation of this case.
Any amended complaint must also comply with the pleading requirements of the
Federal Rules of Civil Procedure, including the requirements that the complaint
contain "a short and plain statement of the grounds for the court's jurisdiction," "a
short and plain statement of the claim," and "a demand for the relief sought." Fed.
R. Civ. P. 8(a)(1)–(3).  Further, "[e]ach allegation must be simple, concise, and
direct." Fed. R. Civ. P. 8(d)(1).  "A party must state its claims or defenses in
numbered paragraphs, each limited as far as practicable to a single set of
circumstances." Fed. R. Civ. P. 10(b).  And to the extent it would promote clarity
to do so, "each claim founded on a separate transaction or occurrence . . . must be
stated in a separate count." *Id*.

**VI.    Order.**

Based on the foregoing, **IT IS ORDERED** that Oxenrider is **GRANTED**

leave to file an amended complaint **on or before May 24, 2023.**  If Oxenrider fails

to file an amended complaint, we will recommend that this case be dismissed.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge